UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE SUBPOENA TO                                CIVIL ACTION (MISC.)
GEOSTOCK US                                      NUMBER 14-37-JJB-EWD


UNDERLYING ACTION
UNITED STATES OF AMERICA
VERSUS                                           CIVIL ACTION
                                                 NUMBER 11-803-JJB-EWD
9.345 ACRES OF LAND, MORE
OR LESS, SITUATED IN IBERVILLE
PARISH, STATE OF LOUISIANA, ET AL.


**RULING ON MOTION TO QUASH OR MODIFY IN PART BOARDWALK LOUISIANA MIDSTREAM'S SUBPOENA TO GEOSTOCK US**

Before the court is the Motion to Quash or Modify in Part Boardwalk Louisiana Midstream's Subpoena to Geostock US (the "Motion to Quash," R. Doc. 1) filed by the United States. The Motion to Quash is opposed by Boardwalk Louisiana Midstream, LLC, f/k/a PL Midstream, LLC ("BLM"), and the United States has filed a reply.[1] For the reasons set forth herein, the Motion to Quash is GRANTED.

**I.     Background**

On August 26, 2013, BLM issued a subpoena to Geostock US, LLC ("Geostock") to produce documents.[2] Thereafter, the United States filed the instant Motion to Quash, asserting that the documents sought via the subpoena are protected attorney work product and trial preparation material. BLM agrees that "in the typical case, the documents sought in the Subpoena herein would be protected by the work product doctrine as trial preparation materials;" however,

---

[1] *See*, R. Docs. 2 and 9.

[2] R. Doc. 1-4.

BLM argues that the requested documents go "to the heart" of matters placed at issue by the United States and are therefore discoverable.[3]

The underlying suit giving rise to BLM's subpoena is a federal condemnation action, *United States of America v. 9.345 Acres of Land, More or Less, Situated in Iberville Parish, State of Louisiana, et al.*, No. 11-803-JJB-EWD, United States District Court, Middle District of Louisiana (the "Underlying Action"). In the Underlying Action, the United States designated Mr. Kenneth Beckman ("Beckman") as an expert and certain Geostock employees as rebuttal experts.[4] Thereafter, the United States moved this court for Modification of the Amended Scheduling Order (the "Motion to Modify Scheduling Order").[5] As good cause to amend the scheduling order, the United States asserted that Mr. Beckman could no longer serve as an expert witness for the United States due to a previously undisclosed confidential relationship with one of the principal defendants in the suit, BLM.[6] In support of the Motion to Modify Scheduling Order, the United States submitted the declaration of one of its attorneys, Michael Krainak, purporting to set out a timeline of its retention of Mr. Beckman and its discovery of Beckman's conflict of interest (the "Krainak Declaration").[7]

In addition to opposing the Motion to Modify Scheduling Order, certain defendants in the Underlying Action filed a Motion to Compel the Deposition of Michael J. Krainak and to Discover Records and Communications of the United States with Regard to Kenneth L. Beckman, International Gas Consultants, and Geostock U.S., LLC (the "Motion to Compel").[8] The purpose

---

[3] R. Doc. 2, p. 28.

[4] R. Doc. 1-2 and 1-3.

[5] Underlying Action, R. Doc. 145.

[6] Underlying Action, R. Doc. 145-1, p. 1.

[7] Underlying Action, R. Doc. 145-2. This Declaration was also attached to BLM's subpoena served on Geostock.

[8] Underlying Action, R. Doc. 157.

of the Motion to Compel was to obtain discovery regarding the Krainak Declaration and the assertions raised in the United States' Motion to Modify Scheduling Order.[9] The same month the Motion to Compel was filed in the Underlying Action, BLM issued the subpoena to Geostock forming the basis of the instant Motion to Quash.

On March 23, 2015, this court denied the United States' Motion to Modify Scheduling Order.[10] Therein, this court found that the "available information supports a finding that the plaintiff knew when it retained [Beckman] that he had a conflict of interest which may precluded (sic) him from serving as one of the plaintiff's experts, but nonetheless made a strategic choice to retain him."[11] The district court subsequently affirmed the denial of Plaintiff's Motion to Modify Scheduling Order.[12] Thereafter, this court denied the Motion to Compel as moot "[b]ecause the purpose of taking Krainak's deposition was to discover information that would be relevant to the plaintiff's motion to modify the scheduling order, and since that motion was denied and the denial was affirmed by the district judge, there is no longer a purpose to depose Krainak."[13]

---

[9] *See*, Underlying Action, R. Doc. 151, p 2 ("Defendants will shortly file a Motion asking the Court to allow them to conduct discovery, including depositions, to obtain direct testimony regarding the unfounded assertions raised in Plaintiff's Motion [to Modify Scheduling Order]."); Underlying Action, R. Doc. 157-1, p. 6 ("By seeking an alteration of this Court's scheduling order and resetting expert deadlines to allow it to redo its expert discovery, the United States wants to alter this entire case…This extreme requests relies almost entirely on the alleged communications between counsel for Plaintiff (Mr. Krainak), Mr. Beckman, and Geostock, and the 'new opinions' allegedly held by Geostock. Notably, the United States has intentionally put these communications at issue in the declaration submitted by Mr. Krainak and the memo.").

[10] Underlying Action, R. Doc. 273.

[11] Underlying Action, R. Doc. 273, pp. 1-2.

[12] Underlying Action, R. Doc. 301.

[13] Underlying Action, R. Doc. 303, p. 2.

## II. Analysis

### a. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).[14]

A subpoena may command a non-party to produce designated documents, electronically stored information, or tangible things in his possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). On timely motion, the court must quash or modify a subpoena if it "requires disclosure of privileged or otherwise protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

Rule 26(b)(3) of the Federal Rules of Civil Procedure restricts a party's ability to obtain work product from an opponent during discovery. Work product consists of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). *See also*, Fed. R. Civ. P. 26(b)(4)(C) ("Rules 26(b)(3)(A)

---

[14] Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015 to clarify the scope of discovery. The 2015 amendments "restor[e] the proportionality factors to their original place in defining the scope of discovery." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes (2015). "The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending." *American Federation of Musicians of the U.S. and Canada v. Skodam Films, LLC*, ---F.R.D. ---, 2015 WL 7771078, at *5 (N.D. Tex. 12/3/15). Given the "restorative nature" of the amendments, the court finds that application of the amended version of Rule 26(b)(1) is "both just and practicable." *See*, *Williams v. U.S. Environmental Services, LLC*, 2016 WL 684607, at n. 2 (M.D. La. 2/18/16).

and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communication, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify the assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed."). The work product privilege "is not absolute, however….opinion work may be disclosed when the holder waives the protection by placing the protected material 'at issue' in the litigation." *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, 2014 WL 29451, at *7 (M.D. La. 1/1/14), citing *Conoco Inc. v. Boh Bros. Const. Co.*, 191 FRD 107, 118 (W.D. La. 1998). "The party seeking discovery of opinion work must show a compelling need for the information and an inability to obtain it otherwise." *Id*. Fed. R. Civ. P. 26(b)(3)(A)(ii).

### b. The Subpoena to Geostock

The subpoena issued to Geostock makes 14 requests for documents. Request 1 requests any documents in any way related to the Krainak Declaration.[15] Requests 2 through 5 ask for all documents provided by or to Plaintiff to Geostock in any way related the Underlying Action, the United States' retention of Geostock, or work performed by Geostock for PL Midstream, LLC.[16] Request 6 asks for all raw data gathered by Geostock at the request of the United States.[17] Request 7 asks for any contracts and/or engagement agreements entered into between the United States and

---

[15] R. Doc. 1-4.

[16] R. Doc. 1-4.

[17] R. Doc. 1-4.

Geostock.[18]  Request 8 asks for any contracts entered into between PL Midstream and Geostock.[19] Request 9 asks for any reports prepared by Geostock for the United States, while Requests 10 and 11 ask for all drafts and mark-ups of those reports.[20]  Request 12 asks for all communications between Geostock and the United States that are in any way related to the Underlying Action or Geostock's retention by or work for the United States.[21]  Request 13 asks for all communications between Geostock and United States in any way related to Geostock's retention by and work for PL Midstream, LLC.[22]  Finally, Request 14 asks for all internal communications between employees of Geostock that in any way relate to the work performed by Geostock on behalf of the United States.[23]

In its Opposition to the Motion to Quash, BLM is clear that "the critical issue…is whether to grant" the Motion to Modify Scheduling Order – which it contends would amount to a "restart" of the United States' expert case.[24]  As it explains: "What did and did not happen between the government and its experts in this regard is of paramount importance to the decision of whether the government is entitled to any restart of its case and thus it is critical that Defendants be allowed to discover those communications.  Defendants have therefor sought the discovery in the document subpoena at issue here."[25]  In describing the scope of the subpoena, BLM asserts that "the

---

[18] R. Doc. 1-4.

[19] R. Doc. 1-4.  The United States does not seek to quash Request 8.  R. Doc. 1, p. 8.

[20] R. Doc. 1-4.

[21] R. Doc. 1-4.

[22] R. Doc. 1-4.

[23] R. Doc. 1-4.

[24] R. Doc. 2, p. 2.

[25] R. Doc. 2, p. 3.

Subpoena in question requests documents relevant to issues raised by the United States in its Motion to Modify…."[26]

To the extent BLM's subpoena requests documents and communications on the subject matter of Mr. Beckman's conflict of interest and the United States' knowledge of that conflict, the court finds that such documents and communications were put "at issue" by the United States' Motion to Modify Scheduling Order and the supporting Krainak Declaration. However, because the Motion to Modify Scheduling Order has been denied, BLM can no longer assert that there is a compelling need for this information. Just as this court previously found that the Motion to Compel was rendered moot by the denial of the Motion to Modify Scheduling Order, so too was BLM's subpoena to Geostock. To the extent BLM's subpoena seeks privileged documents and communications that are relevant to issues other than Mr. Beckman's conflict of interest and the United States' knowledge thereof, no waiver of privilege attached to those documents has occurred.

### III. Conclusion

For the reasons set forth herein, the Motion to Quash (R. Doc. 1) is GRANTED.

Signed in Baton Rouge, Louisiana, on April 5, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[26] R. Doc. 2, p. 4. *See also*, R. Doc. 2, p. 13 ("BLM is entitled to discover the true facts including all communications with Geostock and documents relative to same because it will resolve some of the issues regarding the purported Beckman conflict."); p. 24 ("It is critical for BLM to have this discovery into the dealings between the government and these experts so that it can properly respond to and dispute the government's purported need for a reset of expert discovery."); p. 28 ("The documents requested go to the heart of the United States' argument and the basis of the Krainak Declaration attached to the Motion to Modify.").